1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

7
8

9    JOHN BAGENT,                          CASE NO. 1:06-cv-01842-LJO-SMS PC

10                    Plaintiff,            FINDINGS AND RECOMMENDATIONS
                                            RECOMMENDING MOTION FOR
11        v.                                JUDGMENT ON THE PLEADINGS, OR
                                            ALTERNATIVELY FOR SUMMARY
12    MIMS, et al.,                         JUDGMENT FILED BY DEFENDANT
                                            TRANSCOR AMERICA, LLC BE GRANTED
13                    Defendants.
                                            (Doc. 61)
14
                                            OBJECTIONS DUE WITHIN THIRTY DAYS
15    _____/

16

17                           **FINDINGS and RECOMMENDATIONS**

18    **I.    Procedural History**

19           Plaintiff John Bagent ("plaintiff") is a civil detainee proceeding pro se and in forma

20    pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed this action on

21    November 30, 2007.  The Court screened Plaintiff's complaint pursuant to 28 U.S.C. § 1915A,

22    and found that it states cognizable claims against Defendants Mims, Johnson, and Transcor

23    America, LLC.  Fed. R. Civ. P. 8(a); *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Alvarez v.

24    Hill*, 518 F.3d 1152, 1157-58 (9th Cir. 2008).

25           On March 19, 2010, Defendant Transcor America, LLC (hereinafter "Transcor") filed a

26    motion for judgment on the pleadings pursuant to Rule 12 (c) & (h) of the Federal Rules of Civil

27    Procedure, or in the alternative, for summary judgment/summary adjudication under Rule 56 of

28    those same rules.  (Doc. 61.)  In support of this motion, Defendant Transcor filed two

1    exceedingly similar memorandums of points and authorities.  (Docs. 68 and 69.)  On June 25,

2    2010, the Court ordered Defendant Transcor to file a notice advising on which memorandum of

3    points and authorities they intended to rely as support for this motion.  (Doc. 74.)  On July 2,

4    2010, Defendant Transcor filed a notice indicating that they intended to rely on the latter

5    memorandum which is noted on the Court's Docket as entry number 69.  (Doc. 76.)  Plaintiff

6    filed an opposition to Defendant Transcor's motion for summary judgment on April 5, 2010.[1]

7    (Doc. 72.)  Defendant Transcor filed a reply brief on April 19, 2010.  (Doc. 73.)  Because the

8    Court, in reaching its decision, relies on facts outside of the pleadings, the motion will be decided

9    as a motion for summary judgment.  *See* Fed.R.Civ.P. 12(d).  The motion is deemed submitted.

10           For the reasons discussed herein below, Defendant Transcor's motion for judgment on the

11   pleadings, or alternatively for summary judgment should be granted.

12   **II.    Judgment on the Pleadings Standards**

13           Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are

14   closed but within such time as not to delay trial, any party may move for judgment on the

15   pleadings."  Judgment on the pleadings is appropriate when, even if all material facts in the

16   pleading under attack are true, the moving party is entitled to judgment as a matter of law.

17   *Ventress v. Japan Airlines*, 603 F.3d 676, 681 (9th Cir. 2010) quoting *Fajardo v. County of L.A.,*

18   179 F.3d 698, 699 (9th Cir. 1999).  The court must assume the truthfulness of the material facts

19   alleged in the complaint "and treat as false the allegations in the answer that contradict the

20   complaint."  *Alcazar v. Corporation of Catholic Archbishop of Seattle,*598 F.3d 668, 671 (9th

21   Cir. 2010).  All inferences reasonably drawn from these facts must be construed in favor of the

22   responding party.  *General Conference Corp. of Seventh-Day Adventists v. Seventh Day*

23   *Adventist Congregation Church*, 887 F.2d 228, 230 (9th Cir. 1989).  "Judgment on the pleadings

24   is properly granted when there is no issue of material fact in dispute, and the moving party is

25

26           [1] Plaintiff was provided with the requirements to oppose a motion for summary judgment on June 18, 2008.
27   (Doc. 25.)  While Plaintiff's operative pleading was not signed under penalty of perjury, his brief in opposition to
     Defendant Transcor's motion was such that it may constitute an opposing affidavit for purposes of the summary
28   judgment rule.  *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curium); *Lew v. Kona Hospital*, 754
     F.2d 1420, 1423 (9th Cir. 1985); F.R.C.P. 56(e).

1 entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009)

2 *ref. Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 978 (9th Cir. 1999).

3      If matters outside the pleadings are considered, the motion shall be treated as one for

4 summary judgment. Fed. R. Civ. Pro. 12(d). Since Defendant Transcor submitted declarations

5 and deposition testimony, which are outside the pleadings and which must be considered to

6 properly address this motion, it is properly treated as a motion for summary judgment.

7 **III.**   **Summary Judgment Standard**

8      Summary judgment is appropriate when it is demonstrated that there exists no genuine

9 issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

10 Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

11
12
13
> [A]lways bears the initial responsibility of informing the district
> court of the basis for its motion, and identifying those portions of
> "the pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any," which it
> believes demonstrate the absence of a genuine issue of material
> fact.

14
15 *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the

16 burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

17 in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on

18 file.'" *Id*. Indeed, summary judgment should be entered, after adequate time for discovery and

19 upon motion, against a party who fails to make a showing sufficient to establish the existence of

20 an element essential to that party's case, and on which that party will bear the burden of proof at

21 trial. *Id.* at 322. "[A] complete failure of proof concerning an essential element of the

22 nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a

23 circumstance, summary judgment should be granted, "so long as whatever is before the district

24 court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

25 satisfied." *Id.* at 323.

26      If the moving party meets its initial responsibility, the burden then shifts to the opposing

27 party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec.*

28 *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the

1  existence of this factual dispute, the opposing party may not rely upon the denials of its

2  pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or

3  admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P.

4  56(e); *Matsushita*, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in

5  contention is material, i.e., a fact that might affect the outcome of the suit under the governing

6  law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific*

7  *Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e.,

8  the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Wool*

9  *v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

10      The parties bear the burden of supporting their motions and oppositions with the papers

11  they wish the Court to consider and/or by specifically referencing any other portions of the record

12  they wish the Court to consider.  *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026,

13  1031 (9th Cir. 2001).  The Court will not undertake to mine the record for triable issues of fact.

14  *Id.*

15  **III.   The Second Amended Complaint**

16      The events at issue in this action against Defendant Transcor allegedly occurred while

17  Plaintiff was being transported from the Fresno County Jail to Coalinga State Hospital for

18  Plaintiff's commitment as a Sexually Violent Predator ("SVP") pursuant to Welfare &

19  Institutions Code § 6600, et seq.  Plaintiff complains that his constitutional rights were violated

20  when he was transported in Defendant Transcor's van with criminal prisoners.  (Doc. 46, 2nd

21  Amend. Compl., pp. 4 & 6.)

22  **IV.   Defendant Transcor's Motion**

23      Transcor argues: (1) that Plaintiff failed to state a legally cognizable due process claim

24  under 42 U.S.C. §1983; (2) Defendant's failure to segregate Plaintiff during his September

25  20-21, 2006 vehicular transport does not constitute a due process violation; (3) Transcor did not

26  act "under color of state law" for purposes of Section 1983 and acted in good faith with respect

27  to Plaintiff's vehicular transportation; (4) in the alternative, if Defendant is deemed to have acted

28  under color of state law, it is entitled to qualified immunity; and (5) Plaintiff's failure to allege,

and inability to prove, an actual injury precludes him from recovering compensatory damages.

**V.    Undisputed Facts**

Plaintiff neither admitted nor denied the facts set forth by Defendant as undisputed nor filed a separate statement of disputed facts.  Local Rule 56-260(b).  Therefore, the Court compiled the statement of undisputed facts from Defendant's statement of undisputed facts and Plaintiff's verified opposition.  *Johnson v. Meltzer*, 134 F.3d 1393, 1399-1400 (9th Cir. 1998) (verified complaints and oppositions constitute opposing affidavits for purposes of the summary judgment rule if they are based on facts within the pleader's personal knowledge).  Because Plaintiff neither submitted his own statement of disputed facts nor addressed Defendant's statement of undisputed facts, the Court accepts Defendant's version of the facts where Plaintiff's verified opposition is not contradictory.  The following undisputed facts regarding Plaintiff's transfer from the Fresno County Jail to Coalinga State Hospital by Transcor on September 20/September 21, 2006, are derived from the declaration of Elceria Smith ("Smith") and the Separate Statement of Undisputed Material Facts submitted by Transcor in support of its motion for summary judgment and from Plaintiff's verified opposition to the present motion. (Docs. 65, 66, and 72.)

Transcor is a private corporation that provides transportation services for various law enforcement agencies throughout the United States.  (Doc. 66, Dec. Smith, p. 2, ¶ 5.)  As Managing Director of Operational Support for Transcor, Smith oversees the operational details for the transportation of persons confined by the State of California from one facility to another. (*Id*. at ¶ 7.)  Transcor transports individuals in law enforcement custody from one facility to another in a fleet of security vehicles – the interior design of which allows for limited segregation of individuals via compartments separated by metal walls.  (*Id*. at ¶ 8.)  While most individuals are placed in a larger seating area, there are one or two smaller compartments which have the capacity to seat one to three persons.  (*Id*.)  The exact arrangement of the persons being transported on a given journey is based upon the determination of how to best maintain the security and safety of all occupants of the vehicle.  (*Id*.)

While the individuals are being transported, they are restrained so as to prevent any one

from being able to physically harm another individual.  (*Id*. at ¶ 9.)  Also, the use of restraints is necessary to ensure that Transcor employees maintain control over the transported individuals while the vehicle is traveling to its destination, since there are more individuals being transported than employees of Transcor present in the vehicle.  (*Id*.)  The use of restraints prevents the transported individuals from committing acts of violence towards each other by limiting the range of their physical movement through the use of handcuffs and other approved restraining devices. (*Id*.)

The transportation of a person detained by the State of California is arranged by the particular agency and/or holding facility contacting Transcor to request that a particular individual be moved from one location to another.  (*Id*. at ¶ 10.)  When the request for transportation is received, a schedule is created to determine when that individual needs to reach a specific location.  (*Id*.)  An individual may not be transported in the most geographically direct manner, as other individuals within the same vehicle may need to be transported to a specific location at a particular time based on scheduling limitations imposed by the State of California. (*Id*. at ¶ 11.)  As a result, a particular individual's overall travel time may be greater than what it would otherwise be if that individual was traveling directly from the sending facility to the receiving facility.  (*Id*.)  The transportation of Plaintiff on September 20, 2006 was done at the request of the Fresno County Sheriff's Department.  (*Id*. at ¶ 12.)  Neither the Fresno County Sheriff's Department nor Coalinga State Hospital provided any specific instructions to Transcor to segregate Plaintiff from any other individuals during his September 20-21, 2006 transport. (Doc. 65, UMF # 15.)

Plaintiff is a convicted sex offender.  (Doc. 72, Plntf. Opp., 32:14.)  Plaintiff is included in a class of sex offenders designated as Sexually Violent Predators (hereinafter "SVPs").  (*Id.*, at 32:15.)  Sex offenders are looked upon with hatred by the common, run of the mill prison inmate. (*Id.*, at 32:16.)  SVPs are looked upon with hatred and disdain by persons in custody for an offense which does not involve sexual predation.  (*Id.*, at 32:17-18.)

Transcor transported Plaintiff from the Fresno County Jail in Fresno, CA, to Coalinga State Hospital in Coalinga, CA on September 20, 2006 through September 21, 2006, pursuant to

a request from the Fresno County Sheriff's Department. (Doc. 65, UMF # 4.) Plaintiff was picked up at the Fresno County Jail at approximately 10:00 p.m. on September 20, 2006 and arrived at Coalinga State Hospital at approximately 1:15 p.m. the next day. (*Id.*, UMF # 5.) Several other individuals were transported by Transcor from September 20-21, 2006 on the same vehicle in which Plaintiff was traveling such that additional stops were made in other cities to pick up and drop off various prisoners and detainees. (*Id.*, UMF # 6.) During Transcor's transportation of Plaintiff on September 20-21, 2006, Plaintiff's hands were shackled and handcuffed to his waist and his feet were also shackled with a chain. (*Id.*, UMF # 10.) The other passengers transported that day were restrained in the same manner. (*Id.*) When Plaintiff began his journey from Fresno to Coalinga on September 20, 2006, the segregated seating area located inside of the Transcor vehicle was occupied by other passengers. (*Id.*, UMF # 11.) Plaintiff was transported in the Transcor vehicle behind three securely locked gates which staff would need to unlock and traverse if an incident were to occur. (Doc. 72, Plntf. Opp., 18:11-14.) At no time during his journey did Plaintiff ever request to be segregated from any of the other passengers in the transport vehicle. ((Doc. 65, UMF # 11.) Plaintiff's September 20-21, 2006 transport from Fresno to Coalinga was supervised by two Transcor officers (plus a driver) who were able to see and hear activity in the area where Plaintiff was seated at all times during the journey. (*Id.*, UMF # 12.) Plaintiff was never threatened, assaulted or physically harmed by another person at any point during his journey from Fresno, CA to Coalinga, CA on September 20, 2006 through September 21, 2006. (*Id.*, UMF # 13; Doc. 72, Plntf. Opp., 18:18-19.)

Transcor provided Plaintiff with a meal and water during his journey from Fresno to Coalinga on September 20-21, 2006. (*Id.*, UMF # 16.) Plaintiff received his daily blood pressure medication at the Fresno County Jail on September 20, 2006 and again on September 21, 2006 immediately following his arrival at Coalinga State Hospital. (*Id.*, UMF # 17.)

## VI.    Plaintiff's Claims

Plaintiff alleges that Transcor, acting under contract with the State of California, violated his right to due process under the Fourteenth Amendment and failed to comply with California Penal Code sections 1610 and 4002 by transporting him with penal detainees and/or prisoners.

1   Transcor argues that Plaintiff failed to state a legally cognizable due process claim as sections

2   1610 and 4002 apply to housing civil detainees in a jail rather than in a vehicle for transportation

3   services, and that Transcor's failure to segregate Plaintiff during his September 20-21, 2006

4   vehicular transport does not constitute a substantive or procedural due process violation.

5        Transcor argues that Plaintiff's claim that his rights to due process were violated "is

6   based exclusively upon [Plaintiff's] belief that sections 1610 and 4002 of the California Penal

7   Code conferred upon him the right to be segregated from other individuals while being

8   transported to and from correctional facilities." (Doc. 69, MSJ, 8:17-24.)  However, Plaintiff

9   alleges in the Second Amended Complaint that the conditions under which Transcor transported

10  Plaintiff violated §§ 1610 and 4002 "*and*" the Due Process Clause of the Fourteenth

11  Amendment. (Doc. 46, 2nd Amd. Compl., pp. 4 & 6).  Accordingly, Transcor's alleged violation

12  of Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment must be

13  addressed separate and apart from his claims based on §§ 1610 and 4002 of the California Penal

14  Code (hereinafter "§§ 1600 and 4002.").

15       A.  **Fourteenth Amendment Due Process Claims**

16            1.  **Substantive Due Process**

17       "The concept of substantive due process . . . forbids the government from depriving a

18  person of life, liberty, or property in such a way that shocks the conscience or interferes with

19  rights implicit in the concept of ordered liberty." *Nunez v. City of Los Angeles*, 147 F.3d 867,

20  871 (9th Cir. 1998) (citation and internal quotation marks omitted).  To establish a substantive

21  due process claim, Plaintiff "must, as a threshold matter, show a government deprivation of life,

22  liberty, or property." *Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d

23  1020, 1026 (9th Cir. 2007) (quoting *Nunez,* 147 F.3d  at 871).  "The Due Process Clause takes

24  effect only if there is a *deprivation* of a protected interest." *Nunez*, 147 F.3d at 874 (emphasis in

25  original).

26       "Liberty from bodily restraint always has been recognized as the core of the liberty

27  protected by the Due Process Clause from arbitrary governmental action." *Greenholtz v.*

28  *Nebraska Penal Inmates*, 442 U.S. 1, 18 (1979) (POWELL, J., concurring in part and dissenting

1   in part). "This interest survives criminal conviction and incarceration.  Similarly, it must also

2   survive involuntary commitment." *Youngberg,* 457 U.S. at 316.

3          In determining whether a substantive right protected by the Due Process Clause has been

4   violated, it is necessary to balance "the liberty of the individual" and "the demands of an

5   organized society." *Poe v. Ullman*, 367 U.S. 497, 542 (1961) (Harlan, J., dissenting).  An

6   individual's interest in liberty may also be weighed against the State's asserted reasons for

7   restraining individual liberty.[2]  *See Bell v. Wolfish,* 441 U.S. 520 (1979) (considering a challenge

8   to pretrial detainees' confinement conditions, the Supreme Court agreed that the detainees, not

9   yet convicted of the crime charged, could not be punished, but restrictions on liberty were upheld

10  were reasonably related to legitimate government objectives and not tantamount to punishment).

11         One claiming to have been subjected to "punishment" without due process is required to

12  prove intent to punish or show that the challenged conduct " 'is not reasonably related to a

13  legitimate goal,' " from which an intent to punish may be inferred.  *Block v. Rutherford*, 468 U.S.

14  576, 584 (1984) *quoting Bell v. Wolfish*, 441 U.S. 520, 539 (1979).  "[I]f a particular condition or

15  restriction of pretrial detention is reasonably related to a legitimate governmental objective, it

16  does not, without more, amount to 'punishment.'  Conversely, if a restriction or condition is not

17  reasonably related to a legitimate goal - if it is arbitrary or purposeless - a court permissibly may

18  infer that the purpose of the governmental action is punishment that may not constitutionally be

19  inflicted upon detainees *qua* detainees." *Bell*, 441 U.S., at 539 (footnote and citation omitted).

20         Transcor presents evidence to show that while Plaintiff was transported in the same

21  section of the van as penal detainees and/or prisoners, all custodial occupants of the van had their

22  hands shackled and handcuffed to their waist and their feet were also shackled with a chain (Doc.

23  65, UMF No. 10, p. 3); Plaintiff never requested to be segregated from any of the other

24  passengers in the transport van (*Id.*, UMF No. 11, p. 3); two Transcor officers supervised the

25  transport (in addition to a driver) and were able to see and hear activity in the area where Plaintiff

26

27         [2] For analysis purposes, Plaintiff's claims against Transcor are akin to state and/or government action.
    However, this Court need not determine whether Transcor is a state or private actor since it finds that Plaintiff's
28  rights to due process were not violated during his transport from the Fresno County Jail to Coalinga State Hospital
    on September 20-21, 2006.

was seated at all times during the journey (*Id.*, UMF No. 12, p. 4); Plaintiff was not threatened,

assaulted, or physically harmed by another person at any point during the transport in question

(*Id.*, UMF No. 13, p. 4); the exact arrangement of persons being transported within a van is based

upon Transcor's determination of how to best maintain the security and safety of all occupants of

the vehicle (*Id.*, UMF No. 8, p. 3); it is Transcor's policy to restrain all of the individuals which it

transports so as to prevent the passengers from being able to physically harm another person (*Id.*,

UMF No. 9, p. 3); and the use of restraints prevents the transported individuals from committing

acts of violence towards each other . . . . [and] are necessary to ensure that Transcor employees

are able to maintain control over the transported individuals while the vehicle is traveling to its

destination (*Id.*).  This evidence shows that the manner in which Transcor transported Plaintiff

was chosen as a calculated method to ensure the safety and security of all occupants in the

Transcor transportation van.  *Bell v. Wolfish*, 441 U.S. at 561.

Courts are to play a very limited role in detention administration.  In assessing whether a

specific restriction is "reasonably related" to security interests, courts should "heed [] warning

that '[s]uch considerations are peculiarly within the province and professional expertise of

corrections officials, and, in the absence of substantial evidence in the record to indicate that the

officials have exaggerated their response to these considerations courts should ordinarily defer to

their expert judgment in such matters.' " *Block*, 468 U.S. at 584-85, *quoting Bell*, 441 U.S. at

540-541, n. 23 (*quoting Pell v. Procunier*, 417 U.S. 817, 827 (1974)).  Courts should accord

"'wide-ranging deference in the adoption and execution of policies and practices to further

institutional order and security.' " *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986) (*quoting Bell*

*v. Wolfish*, 441 U.S. 520, 547 (1979)).  This deference applies to conduct during an actual

disturbance as well as prophylactic measures to prevent such a disturbance.  *Jeffers v. Gomez*,

267 F.3d 895, 917 (9th Cir. 2001) *ref Whitley* 475 U.S. at 322.  Further, "even when an

institutional restriction infringes a specific constitutional guarantee, . . . , the practice must be

evaluated in the light of the central objective of prison administration, safeguarding institutional

security." *Bell*, 441 U.S. at 547.  "Ensuring security and order . . .  is a permissible nonpunitive

objective," whether dealing with "pretrial detainees, convicted inmates, or both."  *Id.*, 441 U.S. at

561.  Since ensuring security and order is a permissible nonpunitive objective when dealing with pretrial detainees, it is easily extended to actions pertaining to civil detainees as well.

Transcor has met its burden by showing that the manner in which Plaintiff was transported, with his hands and feet shackled, in near proximity to penal detainees who were likewise shackled, was implemented as a means of ensuring the safety and security of all occupants of the van.  This shows that legitimate, non-punitive interests justified the conditions to which Plaintiff was subjected when he was transported, and that the restrictions imposed upon Plaintiff were not excessive in relation to those interests.  *See Jones v. Blanas*, 393 F.3d 918, 934 (9th Cir. 2004).  The Court finds Transcor has rebutted the presumption of punitive conditions by producing undisputed evidence showing that it used professional judgment in determining where Plaintiff would be seated in the van, based on the need to maintain the security and safety of all of the van occupants, and that Plaintiff was not subjected to restrictions that were excessive in relation to legitimate security concerns.

Plaintiff claims his rights to due process were violated when Transcor placed him in the same section of the transport van as penal detainees and/or prisoners.  However, Plaintiff has not cited to, and this Court is not aware of, any case law that finds transporting SVPs in the same manner and unsegregated from penal detainees to be unconstitutional *per se*.[3]  Further, Plaintiff has not shown that the method and means of transportation utilized by Transcor was intended to punish, nor has he shown that his transportation in a van with penal detainees was " 'not reasonably related to a legitimate goal,' " from which an intent to punish may be inferred.  *Block v. Rutherford*, 468 U.S. 576, 584 (1984) *quoting Bell v. Wolfish*, 441 U.S. 520, 539 (1979).

Accordingly, this Court finds that Transcor is entitled summary judgment on Plaintiff's claims that Transcor violated Plaintiff's right to substantive due process.

## 2.  Procedural Due Process

The Due Process Clause of the Fourteenth Amendment also protects prisoners from being

---

[3]  Throughout his opposition, Plaintiff cited to a number of cases under California law which are not precedential for this Court in determining claims and defenses under the United States Constitution.  Plaintiff did not cite any cases, even under California law, that held transportation of civil detainees unsegregated from penal detainees was *per se* unconstitutional.

1    deprived of life, liberty, or property without due process of law.  *Wolff v. McDonnell*, 418 U.S.

2    539, 556 (1974).  Here, Plaintiff does not allege that he was deprived of life or property such that

3    his claim is best evaluated as a deprivation of liberty during the transport.  "In evaluating the

4    constitutionality of conditions or restrictions of pretrial detention that implicate only the

5    protection against deprivation of liberty without due process of law . . . the proper inquiry is

6    [once again] whether those conditions amount to punishment of the detainee."  *Bell*, 441 U.S. at

7    535 *ref. Ingraham v. Wright*, 430 U.S. 651, 671-72, n. 40 (1977).

8            Brevity has been found to negate a violation based on conditions which might amount to

9    a violation if one was subjected to them for a longer duration.  *Bell*, 441 U.S. at 543 (length of

10   stay (60 days maximum) buttressed a conclusion that conditions, which if exposed to for a longer

11   period of time might have amounted to a violation, were not a violation of procedural due

12   process under the Fifth Amendment); *see also Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir.

13   2008) *ref Betts v. Brady*, 316 U.S. 455, 462 (1942) ("Due process of law is secured against

14   invasion by the federal Government by the Fifth Amendment and is safe-guarded against state

15   action in identical words by the Fourteenth."), *overruled on other grounds by Gideon v.

16   Wainwright*, 372 U.S. 335  (1963); *see also Castillo v. McFadden*, 399 F.3d 993, 1002 n. 5 (9th

17   Cir.2005) ("The Fifth Amendment prohibits the federal government from depriving persons of

18   due process, while the Fourteenth Amendment explicitly prohibits deprivations without due

19   process by the several States: ' nor shall any State deprive any person of life, liberty, or property,

20   without due process of law.' " (quoting U.S. CONST. amend. XIV)).

21          The brevity of time (24 hours) during which Plaintiff was subjected to being transported

22   in close proximity to, and under the same conditions as, penal detainees and/or prisoners does not

23   cause these conditions to amount to punishment so as to violate the Due Process Clause.  *See

24   Bell*, 441 U.S. at 543.  Accordingly, Plaintiff has not stated a cognizable claim for violation of his

25   procedural due process rights under the Fourteenth Amendment.

26                   **3.  Liberty Interests Created by State Law**

27          Liberty interests may arise from the Due Process Clause itself or from state law.

28   *Wilkinson v. Austin*, 545 U.S. 209, 222 (2005).  "After *Sandin*, it is clear that the touchstone of

the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.' " *Id.*, at 223 quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  The state does not create a liberty interest by way of mandatory language in prison regulations.  *Sandin*, at 481-84.  Rather, the existence of a liberty interest is determined by focusing on the nature of the deprivation.  *Id.* Liberty interests created by state law are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, at 484; *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007).

Plaintiff argues that Transcor failed to comply with §§1610 and 4002 when he was transported in the same van and unsegregated from penal detainees.  Both Transcor and Plaintiff give detailed arguments addressing the wording, legislative histories, and case law addressing these two code sections.  However, neither of these two code sections created a liberty interest for Plaintiff merely because they contained mandatory language.  *Sandin*, at 481-84.

Transcor analyzes the statutory construction of both §§ 1610 and 4002 and argues that these sections provide segregation requirements which are contemplated in the context of housing within a jail facility – without any implication that such segregation requirements were intended to be extended to transportation of inmates and/or detainees.  (Doc. 69, Def. P&A, 10:19-12:28.)  Plaintiff argues that, when read together, the "plain, unambiguous language" of both §§ 1610 and 4022 show a legislative intent "to ensure that the custody, care, treatment, safety, and security of persons being detained under the SVPA, are observed and enforced in compliance with Due Process, during all phases of custody -- not just when in the jail facility." (Doc. 72, Plntf. Opp., 25:3-11.)  Plaintiff further argues that it is logical to assume that §§ 1610 and 4002 applied when Plaintiff was transported by Transcor "given the heightened security of a small enclosed vehicle, with three locked doors between the plaintiff and defendant Transcor staff."  (*Id.*)  Plaintiff also argues that there is "no distinction that can possibly be inferred between a 'room' or a 'compartment of a transport vehicle'" (*Id.* at 26:21-28) and that while § 4002(b) "specifically references 'Housing,' the real intent of § 4002 as a whole is stated in

13

1   subdivision (a); 'provide for the safety of the prisoners and staff.'" (*Id.*)

2   The following rules of California statutory construction apply: "Of primary importance

3   the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law.

4   The provision under scrutiny must be given a reasonable and common sense interpretation

5   consistent with the apparent purpose and intention of the lawmakers, practical rather than

6   technical in nature, which, upon application, will result in wise policy rather than mischief or

7   absurdity.  The court should take into account matters such as context, the object in view, the

8   evils to be remedied, the history of the times and of legislation upon the same subject, public

9   policy, and contemporaneous construction." *S.D. Myers, Inc. V. City and county of San*

10  *Francisco*, 336 F.3d 1174, 1179 (9th Cir. 2003) (citations and quotations omitted).  *See also*

11  *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (reiterating "that courts must

12  presume that a legislature says in a statute what it means and means in a statute what it says

13  there.")  Further, "[t]he plain meaning of a statute is always controlling unless that meaning

14  would lead to absurd results."  *S.E.C. v. McCarthy*, 322 F.3d 650, 655 (9th Cir. 2003).

15  There is no doubt that both §§ 1610 and 4002 were implemented to provide for the safety

16  of prisoners and staff.  However, the plain and unambiguous language of both §§ 1610 and 4002

17  apply only to housing of civil detainees at detention facilities.  Neither section lends itself to an

18  implication that it should be extended beyond the physical walls of a detention facility.  Further,

19  the Court is unaware of, and Plaintiff does not cite to, any case law (under federal or California

20  law) which apply either § 1610 or § 4002 to circumstances beyond a detention facility.

21  Thus, Transcor has shown that neither California Penal Code § 1610 nor § 4002 created a

22  liberty interest for Plaintiff so as to require Transcor to segregate him from similarly restrained

23  penal detainees during transport from one facility to another.

24  **VII.   Conclusion and Recommendation**

25  In sum, Transcor has met its burden and has shown that when the facts alleged by

26  Plaintiff are viewed in the light most favorable to him, Plaintiff's right to due process were not

27  violated by the conditions under which he was transported on September 20-21, 2006.

28  Accordingly, as Plaintiff has not raised a genuine issue of material fact as to whether his

1  constitutional rights were violated by Transcor, Transcor is entitled to summary judgment on

2  Plaintiff's claim.  Since Transcor has met its burden and Plaintiff has not shown that there is a

3  triable issue of fact as to whether his rights to due process were violated, the Court need not, and

4  does not, address whether Transcor was acting under color of law to be able to raise the defense

5  of good faith or entitled to qualified immunity.

6       As set forth herein, the Court HEREBY RECOMMENDS:

7      (1)    that the motion for judgment on the pleadings, or, in the alternative, for summary

8          judgment filed on March 19, 2010 by Defendant Transcor be granted;

9      (2)    that the Clerk of the Court be directed to enter judgment for Defendant Transcor

10          and against Plaintiff;

11      (3)    that the Clerk of the Court be directed to close the case.

12       These Findings and Recommendations will be submitted to the United States District

13  Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within

14  **thirty (30) days** after being served with these Findings and Recommendations, the parties may

15  file written objections with the Court.  The document should be captioned "Objections to

16  Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file

17  objections within the specified time may waive the right to appeal the District Court's order.

18  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

21  IT IS SO ORDERED.

22  **Dated:   August 17, 2010**        **/s/ Sandra M. Snyder**
                 UNITED STATES MAGISTRATE JUDGE